Submitted on briefs October 16; affirmed November 19, 1940

# BRADFORD *v.* BRADFORD
### (107 P. (2d) 106)

*Roscoe P. Hurst* and *Guy L. Wallace,* both of Portland, for appellant.

*Wheelock & Wheelock* and *W. H. Morrison,* all of Portland, for respondent.

KELLY, J.  This is an action to recover damages for the alienation of the affection of William Leslie Bradford for his wife the plaintiff herein. The defendant is the mother of William Leslie Bradford.

From a judgment of involuntary nonsuit plaintiff appeals.

At the time of the marriage of plaintiff and said William Leslie Bradford, to-wit, April 5, 1936, an infant daughter of the said William Leslie Bradford, by a former marriage, had attained the approximate age of one year, which child, from the death of her mother on or about May 19, 1935, had been under the care and custody of defendant herein.

Plaintiff charges that soon after plaintiff's marriage to defendant's son, defendant commenced toward plaintiff a course of conduct of falsehoods, secret conversations and innuendos told to said son of defendant, plaintiff's husband, whereby in violation of an express agreement that plaintiff should have the custody of said child, defendant secured her care and custody and refused to surrender the same to plaintiff; and that thereby and through defendant's wanton influence over, and persuasions exercised upon, plaintiff's husband, defendant caused plaintiff's husband to desert and abandon plaintiff.

On or about September, 1937, plaintiff's husband instituted a suit for divorce against plaintiff, which suit was tried in the circuit court of Oregon in and for Multnomah county on or about March 11, 1938, resulting in an order of dismissal.

At the trial of said divorce suit, defendant herein was subpoenaed by the plaintiff herein, but defendant did not testify therein in behalf of her son, plaintiff's husband.

■ Counsel for defendant, in cross-examining plaintiff in the instant case asked her if her husband and she had not quarreled over money matters and who should buy the groceries, or over buying groceries and things

of that kind. Plaintiff answered this question in the affirmative.

The first assignment of error is based upon the denial by the trial court of appellant's offer of proof to show that the quarrels between plaintiff and her husband were caused by happenings other than those pertaining to money and that such quarrels, as plaintiff and her husband had, were directly attributable to the defendant.

The offer of proof is in the following language:

"With relation to the question asked by Mr. Morrison of the plaintiff, if it was not a fact that the plaintiff and her husband, Leslie Bradford, quarreled over money matters, to which question the plaintiff responded 'Yes, we did', the plaintiff offers to prove further in relation to that answer that the plaintiff was under the care of a doctor who had prescribed a certain diet to relieve a condition which existed in the plaintiff of malnutrition, anemia, low blood pressure, and a general run down nervous condition, and that this condition was due largely to the treatment which the husband had accorded to his wife after he returned home when his divorce suit had been dismissed; and that Leslie Bradford, the plaintiff's husband, refused at all times to furnish plaintiff with the diet which the doctor had prescribed as necessary to cure her physical ailments; that he was furnished with a copy of the diet list and that he took pains to see that the articles of food which he brought home were not the articles which the doctor had recommended as being suitable for the requirements of the plaintiff, but were rather the articles which were on the list which the doctor had said the plaintiff should not use."

We find nothing in the foregoing offer of proof charging or tending to prove any conduct or statement of defendant whatever. For that reason no error was committed in sustaining defendant's objection thereto.

■ Error is predicated upon the denial by the trial court of an offer of proof to the effect that at defendant's home plaintiff was viciously assaulted by defendant's daughter and sister; the plaintiff's hair was pulled and plaintiff was struck with such force over the ear that a hemorrhage ensued and the attention of an ear specialist was required; and that during the melee plaintiff called for help; but defendant merely walked up and down in front of the door, watched the assault, made no move to stop it and uttered no word of protest.

Bearing in mind that the husband of plaintiff was not present and that neither defendant's daughter nor defendant's sister is a party hereto, it is apparent that the foregoing offer of proof merely discloses a neutral attitude on the part of defendant in reference to a combat between her son's wife, the plaintiff, and two of defendant's kinswomen who are not parties to this action.

We think that the trial court did not err in sustaining defendant's objections to the foregoing offer.

■ Further error is assigned because the trial court denied an offer of proof to the effect that at defendant's home in the presence of defendant, and of Mrs. Hobson and her daughter, when plaintiff's husband made the statement that he was going home, either defendant's daughter or sister said: "You had better not go home because that woman will poison you"; and then and there when plaintiff's husband said: "And I suppose I will have to take the baby back too"; either the sister or the daughter of defendant replied: "You had better not take the baby back because she will poison the baby too"; and that defendant made no protest to either of the statements expressed either

by defendant's sister or daughter. We think that defendant's silence with respect to such statements does not come within the category of those instances where it becomes the duty of one to disclaim, and failure so to do may be proven as inconsistent with a subsequent disclaimer. This offer of proof contains no statement to the effect that defendant entertained a malicious or hostile opinion of plaintiff. If such a charge had been made and defendant had remained silent, the learned trial court would have overruled an objection to such an offer. No reversible error was committed in sustaining defendant's objection to the offer as made.

A reading of the testimony leads us to the conclusion reached by the learned trial court. The difference arising between plaintiff and defendant pertained to the procedure of taking care of a little girl, who is the grandchild of defendant and the daughter of plaintiff's husband by a former marriage. As we read the testimony, there is nothing therein from which it can reasonably be deducted that defendant sought to estrange her son from his wife the plaintiff herein.

The case of *Harris v. Hindman*, 130 Or. 15, 278 P. 954, cited by plaintiff, is an action for damages because of assault and battery. Defendant's son admitted striking plaintiff, but claimed he acted in self-defense. On the trial, plaintiff was permitted to testify to a declaration made by the defendant's father in the appellant's presence, immediately after the altercation, to the effect that the father proposed to take the defendant to town, to have him arrested and make him pay for the injury inflicted.

This court held that a son who had dealt an elderly man a severe blow and was thus spoken to by his father would promptly assert that he had acted in self-defense if such were the truth.

When defendant remained silent as her kinswomen made derogatory statements concerning plaintiff, defendant, in the instant case, was neither directly nor indirectly charged with wrongful conduct toward plaintiff. At most, she merely failed to contradict the statements made by her sister or daughter as to what they said plaintiff would do.

The case of *Pugsley v. Smyth*, 98 Or. 448, 194 P. 686, deals with statements alleged to have been made by the deserting spouse. The question of the admissibility of testimony showing that the defendant remained silent when some one else made derogatory statements concerning plaintiff is not discussed.

We cannot agree with plaintiff's contention that the facts established in *Roberts v. Cohen*, 104 Or. 177, 206 P. 295, were no stronger than in the case at bar. In *Roberts v. Cohen*, supra, the plaintiff, a gentile, married defendant's son, a Jew. Because of its proximity to the Jewish synagogue, defendant objected to the place plaintiff and her husband secured in which to live. Defendant objected to plaintiff being employed in her husband's store saying: "Mine Gott; don't let her work in our store; she will steal us blind, and we will go broke if she would work in his store." At another time, defendant said: "I have stuck to you, Ike Labowitch, and now you stick to me. I gave up my husband for you, and the man I loved for you; now you stick to me." In the case at bar, no such testimony appears.

■ The other Oregon cases, cited by plaintiff, declare the well-known rule that, in considering a motion for judgment of involuntary nonsuit, plaintiff's evidence is to be deemed to be true and every inference of fact that can be reasonably and legitimately drawn there-

from should be given effect; and the evidence must be interpreted in the light most favorable to plaintiff.

While in this case there appears to be a difference of opinion between plaintiff and defendant as to the proper course to be taken in caring for the little girl, who is the defendant's granddaughter and the plaintiff's stepdaughter, there is no competent evidence of a course of conduct on defendant's part having for its purpose the estrangement of plaintiff's husband from plaintiff. It is true that enmity toward plaintiff appears on the part of defendant's daughter and defendant's sister, but they are not parties hereto.

■■ In this case, there are two distinct elements of the wrong which plaintiff must prove in order to prevail. First, that defendant did actually alienate the affections of plaintiff's husband; and, second, that such action on defendant's part was malicious. *Schneider v. Tapfer*, 92 Or. 520, 180 P. 107; *Noll v. Carlin*, 101 Or. 203, 199 P. 596. There is no testimony that anything defendant did or said actually caused an alienation of the affections of plaintiff's husband; and, as we understand and interpret the record, there is no testimony of malice on defendant's part. Malice, in a case of this kind, means the intentional doing of a wrongful act without just cause or excuse. *Monen v. Monen*, 64 S. D. 581, 269 N. W. 85, 108 A. L. R. 404.

■ Defendant disliked the character of care that plaintiff bestowed upon the little girl and manifested that dislike by substituting her own attention and oversight for it, not with a malicious purpose toward plaintiff but with a grandmother's solicitude for the welfare and happiness of her grandchild.

Defendant asserted her right to advise her son. There is no testimony that any advice was given to

plaintiff's husband by defendant to the prejudice of plaintiff; and there is no testimony tending to show that plaintiff's husband lost his love for his wife by reason of the mother's advice.

■ The presumption in an action against parents for alienation of affection is that they acted in good faith and under the influence of mutual affection and for what they believed to be the real good of their child. *Monen v. Monen*, supra. There is nothing in the record of the instant case which overcomes that presumption.

For these reasons, the judgment of the circuit court is affirmed.

RAND, C. J., and ROSSMAN, BAILEY and LUSK, JJ., concur.